# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 12, 2014

## BILLY JACK COOK v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Sumner County**
**No. 886-2013      Dee David Gay, Judge**

---

**No. M2014-00616-CCA-R3-PC - Filed May 22, 2015**

---

The petitioner, Billy Jack Cook, filed a petition for post-conviction relief in the Sumner County Criminal Court, alleging that his guilty pleas were not knowingly and voluntarily entered. After a hearing, the post-conviction court denied relief, and the petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

James J. Ramsey (on appeal) and Roger A. Sindle (at trial), Gallatin, Tennessee, for the appellant, Billy Jack Cook.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Jayson Criddle, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On August 8, 2013, the petitioner pled guilty to fifty counts of especially aggravated sexual exploitation of a minor, ten counts of rape of a child, and seventeen counts of aggravated rape of a child in exchange for a total effective sentence of seventy years. During a recitation of the factual basis for the pleas, the State recounted that the petitioner had engaged in "digital penetration, oral sex and slight penile-vaginal penetration and penile-anal penetration" of his three-year-old daughter and his five-year-old son. The acts were witnessed by the petitioner's co-defendant, Ashley Wright, who informed the police that the

petitioner had photographed the abuse and had uploaded the photographs to the internet. The police ultimately recovered sixty or seventy sexually explicit images of the victims. The police interviewed the victims, who revealed that the abuse had gone on for "quite some time" and that they were encouraged to engage in sexual activity with the petitioner and with each other.

At the guilty plea hearing, the petitioner said that he was twenty-eight years old and had attended some college courses. He acknowledged that he signed the guilty plea agreement after reviewing the document with his trial counsel and agreed that he signed the document of his own free will. The petitioner said that he was taking Benadryl and Vistaril "for [his] nerves" but that the medication did not impact his ability to understand or to make decisions. The petitioner maintained that he understood the charges to which he was pleading guilty and the accompanying sentences. The petitioner expressed his satisfaction with the performance of trial counsel. The trial court said that the petitioner appeared responsive, alert, well-oriented, and level-headed and that he appeared to understand the proceedings and the plea agreement. Upon questioning by the trial court, trial counsel asserted that the petitioner appeared to understand what he was doing.

Thereafter, on November 20, 2013, the petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. At the post-conviction hearing, the petitioner testified that prior to the entry of his guilty pleas, he was examined by the staff at Middle Tennessee Mental Health Institute (MTMHI). When asked if he understood that the examination was to determine his competency to stand trial, the petitioner said, "I thought it was the same thing as when they were trying to see what my diagnosis was." The petitioner said that within one hour of his arrival at the facility, he was beaten by six staff members and that when he informed a doctor about the beating, the doctor told the petitioner that he deserved it. The petitioner asserted that by the time he arrived at MTMHI, the doctors had already formed an opinion of him based upon the evidence against him. The petitioner said that during the forensic examination, the doctor informed him that he was being tested for pedophilia.

The petitioner said that previously he had been diagnosed with schizophrenia "in a therapeutic group home . . . and in a mental hospital." He informed employees of the Sumner County Jail that he needed medication for schizophrenia and was told that he could not get the medication until he was in prison. The petitioner also told his trial counsel that he needed medication, and trial counsel said that it was not his responsibility to insure the petitioner got medication and was able to assist in his defense.

The petitioner acknowledged that at the guilty plea hearing, the trial court asked if he

was taking any medication that would affect him mentally and that he advised the court he was taking Benadryl and Vistaril, an anxiety medicine that did not affect his ability to understand the proceedings. He complained, however, that the trial court did not ask if he needed any additional medication. The petitioner said that without his medication for schizophrenia, he was unable to comprehend what transpired at the guilty plea hearing. The petitioner contended that he accepted the effective seventy-year sentence in order to get his medication. The petitioner said that he could not recall everything that happened at the hearing, explaining that he occasionally experienced blackouts and that he thought he experienced such a blackout during the hearing.

On cross-examination, the petitioner acknowledged that someone with schizophrenia potentially could be competent to stand trial. He did not recall being evaluated by Dr. Keith Caruso.

Upon questioning by the post-conviction court, the petitioner said that he did not recall telling the trial court that he had some college education. The petitioner said he was unsure at what point he blacked out during the plea process. He maintained that he blacked out multiple times a day and that he had suffered blackouts since he was a child.

The petitioner said that trial counsel visited him only two or three times. Trial counsel did not show him evidence but told the petitioner that the State had DNA evidence and incriminating photographs. The petitioner did not recall trial counsel conveying the State's offer of settlement or discusing the potential sentences the petitioner faced. The petitioner also did not remember abusing his children or taking explicit photographs of them. He acknowledged that his signature was on the plea agreement but stated that he did not recall signing the document.

Trial counsel testified that he visited the petitioner at least three times. He never noticed the petitioner experiencing a blackout or seeming to be unaware of his surroundings. The petitioner always seemed to understand trial counsel's questions and responded appropriately.

Trial counsel said that he gave the petitioner a copy of the discovery materials and discussed the significant evidence the State had against him. In particular, they discussed the photographs, the children's forensic interviews, and Wright's statement.

Trial counsel said that the petitioner had been evaluated at MTMHI to determine his competency to stand trial. Thereafter, trial counsel filed a motion for a "separate, independent evaluation," which was granted. Dr. Keith Caruso performed the second evaluation but did not prepare a written report of the results. Nevertheless, Dr. Caruso's

conclusions mirrored those of MTMHI: the appellant had mental problems, he was competent to stand trial, and he was malingering. The petitioner never indicated that he did not recall either evaluation.

Trial counsel asserted that the petitioner never mentioned that he was unable to function, that he was having mental issues, or that he could not assist with his defense. The petitioner also did not inform counsel of his need for medication. Trial counsel denied that the State had any DNA evidence against the petitioner and asserted that he did not tell the petitioner that such evidence existed.

Trial counsel informed the petitioner of the charges he was facing and the potential sentences he faced if he went to trial and was convicted. Trial counsel advised the petitioner that considering the evidence against him and the lengthier sentence he faced if convicted at trial, trial counsel considered the seventy-year sentence to be "reasonable." The petitioner agreed to plead guilty and accept a seventy-year sentence because he knew he would spend the rest of his life in jail.

Trial counsel said that before the guilty plea hearing, he told the petitioner to be respectful to the trial court and to tell the truth. Trial counsel also told the petitioner to inform the court if he did not think counsel had represented him properly. Trial counsel watched the petitioner as he responded to questions during the guilty plea hearing but did not notice him "check out or black out." When asked if he pressured the petitioner to plead guilty, trial counsel responded, "If I did, I was unaware of it." Trial counsel said that he had a good relationship with the petitioner.

On cross-examination, trial counsel said that he told the petitioner that the State had overwhelming evidence against him. The petitioner never told trial counsel that petitioner was having blackouts or that he needed medication. The petitioner seemed to remember the events that led to his charges and never claimed to have problems with his memory. Nevertheless, trial counsel had concerns about the petitioner's mental health because "[t]he behavior he engaged in is not normal." Trial counsel said that when he read the petitioner's post-conviction petition, he became "quite angry because none of it seemed to be true or was true."

Trial counsel said that he informed the petitioner of his right to trial but advised against it. Nevertheless, he was surprised when the petitioner accepted the plea agreement. Trial counsel said that on the day of the guilty pleas, he spoke with the petitioner before and after the pleas. The petitioner never gave an indication that he was not lucid or that he was having mental health issues that day. Trial counsel fully discussed the plea agreement with the petitioner prior to the entry of the guilty pleas.

Upon questioning by the post-conviction court, trial counsel said that he was licensed to practice law in 1991 and that he was appointed to represent the petitioner. Trial counsel said that he had never seen the petitioner "act in the way that he did today on the witness stand in recalling events and discussing things."

Trial counsel said that he advised the petitioner that if he were convicted at trial, "the consequences would have been in the thousands of years." During trial counsel's first meeting with the State, the prosecutor expressed his intention to have the petitioner incarcerated for the rest of his life. Nonetheless, trial counsel tried to negotiate a "palatable offer," and they eventually agreed upon an effective sentence of seventy years. When trial counsel conveyed the offer to the petitioner, he accepted it the same day.

The petitioner actively participated in the discussion about the plea agreement and asked whether the trial court could recommend that he be housed in a special needs facility. Trial counsel said that he would ask for the recommendation, which the trial court ultimately agreed to make.

Post-conviction counsel recalled the petitioner, and he accused trial counsel of lying during his testimony. Petitioner again asserted that trial counsel claimed the State had DNA evidence against him. He also complained that the doctors at MTMHI were prejudiced because of the charges against him and that they wanted "vengeance."

The petitioner said that he wanted the post-conviction court to set aside his guilty pleas. He said he wanted to testify at trial so that a jury could hear the truth. When asked if he wanted a trial even if it would harm his children, the petitioner said, "It would . . . do more harm to everyone if my side is not heard. . . . Because I'm not heard and because – I didn't do any of this stuff . . . and it's hurting my kids for me not being there anymore. That's psychologically damaging. I grew up without both my parents."

On cross-examination, the petitioner again asserted that he did not abuse his children. He stated that he had never seen the photographs the State had and that he did not believe they existed.

When the post-conviction court asked the petitioner if he had informed trial counsel of his innocence, the petitioner responded that he could not remember.

At the end of the hearing, the post-conviction court denied relief, holding that the petitioner's trial counsel was not ineffective and that the petitioner's guilty pleas were knowingly and voluntarily entered. On appeal, the petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of

a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Initially, we note that at the guilty plea hearing, the petitioner asserted that he was not pressured or threatened into pleading guilty, that he understood his pleas, and that he nevertheless wanted to plead guilty. This court has previously stated that "'[a] petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations 'carry a strong presumption of verity.'" Tina G. Strickland v. State, No. E2013-01118-CCA-R3-PC, 2014 Tenn. Crim. App. LEXIS 128, at *13-14 (Knoxville, Feb. 14, 2014) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), perm. to appeal denied, (Tenn. June 23, 2014).

Further, at the end of the post-conviction hearing, the court said to the petitioner,

> [T]his is one of the most fantastic act displays I've ever seen in a court of law, and I don't believe you one bit, sir. You testified today, put your hand on the Bible and [were] sworn to tell the truth, the whole truth, and nothing but the truth, and there's not much that you said, sir, that I believe.

The post-conviction court stated that counsel's representation was "admirable." The post-conviction court specifically accredited the testimony of trial counsel, who asserted that he discussed the State's evidence with the petitioner, informed him of the charges he was facing, told him of the potential sentences he faced if he were convicted at trial, and reviewed the State's plea offer with him.

The post-conviction also found that

> [the petitioner] never asked [trial counsel] about meds or taking care of that. [Trial counsel] never mentioned the fact that they had DNA. Every time he met with the [petitioner, they] got along well. They never had a falling out. When taking 70 years in this particular plea, . . . [the petitioner] knew he would spend the rest of his life in jail. And [trial counsel] talked about the negotiations and how the negotiations ended up at 70 years.

> The [petitioner] never told [trial counsel] that he could not recollect events. He went over all the overwhelming evidence with the [petitioner]. There was never any indication of him blacking out. There was never any indication of his not remembering anything. He always gave answers. He always remembered timeframes. And he never asked about helping to get any kind of medication.

The court further found that the petitioner "did what [he] believed to be best for [him] in this particular case." Based upon the foregoing, the post-conviction court held that trial counsel was not ineffective and that the petitioner's guilty pleas were knowing and voluntary. The record does not preponderate against the post-conviction court's findings. Accordingly, we conclude that the post-conviction court did not err by denying the petition.

### III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE